# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **LANA CALHOUN #1845537** | § | |
| | § | |
| **V.** | § | **W-20-CA-380-ADA** |
| | § | |
| **BRIAN COLLIER, et al.** | § | |

## ORDER

Before the Court are Plaintiff's Amended Complaint (#7), more definite statement (#8), Defendant Bryan Collier's Motion to Dismiss which the Court converted to a motion for summary judgment (#29), Defendants Bryan Collier, Jennifer Cozby, and Karen Stroleny's Motion for Summary Judgment (#47), Plaintiff's response (#48), and Plaintiff's Supplemental Response (#50). Plaintiff filed and was initially proceeding pro se, but is now represented by counsel and has paid the filing fee.

## STATEMENT OF THE CASE

At the time she filed her complaint pursuant to 42 U.S.C. § 1983, Plaintiff was confined in the Texas Department of Criminal Justice - Correctional Institutions Division. Plaintiff asserts that she has been prevented from withdrawing funds from her inmate trust fund account on several occasions. Plaintiff claims that Defendants have violated her due process rights by failing to provide a meaningful opportunity to be heard before processing her withdrawal requests. Plaintiff sues Bryan Collier, Jennifer Cozby, and Karen Stroleny. Plaintiff seeks a declaratory judgment, prospective injunctive relief, and attorney's fees.

1

DISCUSSION AND ANALYSIS

A.      Factual Background

TDCJ Administrative Directive 14.62 provides guidelines for handling offender funds, accounts, and transactions. AD 14.62 states that offenders shall not provide money to other offenders, and that any deposit from one offender to another, processed through an outside person or bank shall result in an investigation. If confirmed, a violation may result in a disciplinary action for a violation of trafficking and trading rules. The policy provides that approving officers may refuse to approve any withdrawal the approving officer or supervisor considers a security violation, such as extortion. The policy provides that a hold will be initiated to freeze the account pending investigation of alleged violation of TDCJ policy and explains when the hold on the account shall end. The purpose of this TDCJ policy is to prevent trafficking, trading, and extortion in prisons.

Prisoners receive the TDCJ Offender Orientation Handbook upon entering TDCJ. The Handbook includes guidelines for prisoners regarding their inmate trust fund accounts. The Handbook also states that "[a]nyone who deposits or maintains funds in an Inmate Trust Fund thereby agrees to be bound by agency policies concerning such funds which are in effect at the time these funds are placed in the account or thereafter." The Handbook further explains that inmates may not make deposits to another inmate using an outside person, and that doing so will result in an investigation and a disciplinary proceeding.

An inmate can use the funds in their account to make purchases from the commissary or through approved vendors. They may also send funds to people outside the prison. According to AD 14.62, when an inmate wishes to send funds to someone, they submit a withdrawal request to the approving officer. The approving officers may refuse to approve any withdrawal they consider a security violation. Plaintiff asserts that inmates with funds in excess of their immediate needs are encouraged to open an account and transfer funds to an outside banking facility.

As of May 2019, Plaintiff had more than $75,000 in her inmate trust fund account. Plaintiff sent several separate withdrawal requests starting around July 1, 2019, requesting that funds be sent from Plaintiff's account to a Mr. Wilkerson. These requests were denied. Because the amount of money in Plaintiff's account was so large, and because she was sending large amounts to several individuals, an investigation was opened regarding possible criminal or illegal activities. Plaintiff was informed by Warden Cozby that the withdrawals had been stopped due to an investigation regarding Plaintiff sending money to an outside individual in order to have that individual deposit the money into the trust funds of other inmates.

The investigation determined that Plaintiff was "running a business" with several different people, including another inmate and an outside individual. Plaintiff would send money to the outside individual and the outside individual would then send money to seven other inmates. It was also determined that Plaintiff had been sending money to an attorney. Plaintiff was interviewed by Cozby during a "2-hour session" as part of the investigation. On December 19, 2019, a disciplinary proceeding was held charging

Plaintiff with trafficking and trading. At the hearing, Plaintiff was provided counsel and given the opportunity to testify and present evidence. Plaintiff was found guilty of trafficking and trading by sending money to an outside individual who was depositing it into the accounts of multiple other inmates. It was recommended that the only withdrawals Plaintiff be entitled to make should be to the attorney of record or verified court payments.

Plaintiff, however, continued to attempt to make withdrawals of significant amounts of money to be sent to outside individuals other than her attorney or the court. These withdrawal requests were denied and Plaintiff filed grievances regarding the denials on February 6, 2020, February 12, 2020, August 4, 2020, and November 25, 2020.[1] For each grievance, there was an investigation and she was provided with a response.

Plaintiff filed this suit on May 11, 2020, and filed her amended complaint on June 11, 2020. The Court dismissed the case for failure to state a claim, and the Fifth Circuit vacated and remanded on appeal, determining that the allegations in Plaintiff's complaint indicated that the deprivation of her property "may have resulted from established state procedure or policy rather than random and unauthorized action." Defendants were served and Defendant Collier filed a motion to dismiss arguing that Plaintiff's claims against Collier were barred because Plaintiff failed to allege Collier had

---

[1] Plaintiff alleges that, at least in part, she was attempting to send money to a "paralegal" or an "expert" who was investigating her criminal conviction and who was supposed to prepare an expert report. While Plaintiff indicates she intends to seek state and federal habeas relief, it seems likely that she would be time-barred. Plaintiff indicates she had been attempting to gather and review documents challenging her conviction starting as early as 2017, however she was convicted and sentenced in 2013.

any personal involvement and thus Collier was entitled to Eleventh Amendment immunity.

The Court converted Collier's motion to dismiss to a motion for summary judgment and Defendants filed a motion for summary judgment that incorporated the arguments from the motion to dismiss. Defendants assert that they are entitled to Eleventh Amendment immunity. Defendants also contend that Plaintiff is not entitled to prospective injunctive relief pursuant to *Ex Parte Young*, 209 U.S. 123 (1908).

Plaintiff asserts that she has adequately pleaded an ongoing violation of her due process rights. Plaintiff claims that she was denied due process by the failure to accord her a constitutionally required opportunity to be heard after she submitted requests for withdrawals from her trust fund account and prior to the denial of the requests. Plaintiff contends that these denials of her due process rights will continue in the future. Plaintiff contends she is entitled to prospective injunctive relief because she will continue to be denied the ability to send withdrawals to outside people without first being entitled to a pre-deprivation hearing. As evidence of the continuing nature of the alleged violations, Plaintiff supplemented her response with evidence showing that her most recently submitted withdrawal request, for $5,000 to "a friend in the free-world" was denied by the warden without providing Plaintiff an opportunity to be heard prior to the denial.

B.  <u>Summary Judgment Standard</u>

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Eason v. Thaler*, 73 F.3d

1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); Fed. R. Civ. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler*, 909

F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

C.   <u>Eleventh Amendment Immunity</u>

Pursuant to the Eleventh Amendment, federal courts are without jurisdiction over suits against a state unless that state has waived its sovereign immunity or Congress has clearly abrogated it. *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. *Green v. State Bar of Texas*, 27 F.3d 1083, 1087 (5th Cir. 1994). To the extent any of Plaintiff's claims could be construed against Defendants in their official capacities for monetary damages, Defendants are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign. *Pennhurst State School Hosp. v. Halderman*, 465 U.S. 89 (1984).

The Eleventh Amendment does not apply to a request for a federal court to grant prospective injunctive relief against state officials on the basis of federal claims; thus, a request for prospective injunctive relief against state officials or employees in their official capacities falls within an exception to Eleventh Amendment immunity. *See Ex parte Young*, 209 U.S. 123, 149 (1908). Claims for declaratory and injunctive relief for past constitutional violations are, however, barred by the Eleventh Amendment. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("[T]he [*Young*] exception is narrow: It applies only to prospective relief, [and] does not permit

judgments against state officers declaring that they violated federal law in the past."). The *Ex parte Young* exception extends only to claims against state officials for prospective injunctive relief to prevent a continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985).

To determine if the *Ex parte Young* exception applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). "The *Ex parte Young* exception is 'focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past.'" *Williams v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020) (quoting *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986)). Consequently, "[p]laintiffs must allege that 'the defendant *is violating* federal law, not simply that the defendant has done so' at some point in the past," to bring their claims within *Ex parte Young*'s ambit. *Id.* at 738 (quoting *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015)). The "continuing violation" requirement is satisfied when a state officer's enforcement of a policy allegedly in violation of federal law is threatened, even if the threat is not yet imminent. *See Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 330 (4th Cir. 2001); *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1338 (11th Cir. 1999) ("ongoing and continuous violation" does not mean that the enforcement of the allegedly unconstitutional state statute *actually must be in progress* against plaintiffs . . . where there is a threat of future enforcement that may be remedied

8

by prospective relief, the ongoing and continuous requirement has been satisfied") (emphasis added).

Plaintiff requests a declaratory judgment that Defendants' prior actions were unconstitutional. That claim is barred by the Eleventh Amendment. Furthermore, any of Plaintiff's claims seeking injunctive or declaratory relief based on purported constitutional violations occurring in the past are barred by the Eleventh Amendment.

Plaintiff's Amended Complaint alleged injuries stemming from Defendants' alleged failure to provide due process on three or four occasions prior to filing suit. Plaintiff requested prospective injunctive relief ordering Defendants to provide her notice and a chance to be heard prior to denying her withdrawal requests and to provide adequate reasons for denying withdrawal requests. Plaintiff also sought prospective injunctive relief enjoining Defendants from retaliating against her. Plaintiff explained in greater detail in her more definite statement that she was alleging that TDCJ had a policy, procedure, or established custom which violated her right to due process and her property interest in her trust fund money. Plaintiff claimed she lost interest income on her funds "in the thousands of dollars." Plaintiff also alleged that, the rejection of her withdrawals "may have cost Plaintiff the services of a forensic expert, for an expert report necessary for Plaintiff's holding criminal conviction case." Plaintiff also specifically reiterated that her complaint was that "she was denied notice and a meaningful opportunity to be heard, and reasons, before the Defendants, TDCJ, deprived her of her property, and pursuant to an established TDCJ procedure or custom."

Plaintiff did not allege any ongoing violation. Her claims were based solely on the past actions of Defendants. While she sought prospective injunctive relief, she did not plead that there was an ongoing violation. To the extent Plaintiff pleaded an unconstitutional policy, she arguably may have been pleading that Defendants were enforcing a policy that violated due process, which could suffice to show an ongoing violation. However, Plaintiff never pleaded any threat or concern about future actions, instead focusing entirely on Defendants' past actions and how those had injured her. Furthermore, in Plaintiff's response to the motion for summary judgment, she specifically argued that it "makes no difference whether the policy is constitutional or not . . . because Plaintiff pleads that the Defendants violated Plaintiff's due process rights pursuant to that policy . . . albeit in an unconstitutional manner."

In response to the motion for summary judgment, Plaintiff argued that simply by requesting prospective injunctive relief she had sufficiently pleaded an ongoing violation, reasoning that there would be no need for such relief if the violation were not ongoing. Plaintiff also argued that the Fifth Circuit's order vacating and remanding found "directly, or certainly by implication, that Plaintiff's complaint stated a viable claim for a due process violation and for prospective injunctive relief." For the first time, in her response to the motion for summary judgment, Plaintiff also made specific assertions that she faced future harm due to the inability to send monetary gifts, make outside purchases from approved vendors, or place some of her money in an outside bank account.

It is well settled in the Fifth Circuit that a claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) (quotation omitted); see also *Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789–90 (5th Cir. 2021) (per curiam) ("Our precedent precludes a plaintiff from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment."). As for Plaintiff's assertion that the Fifth Circuit's order implied that Plaintiff's complaint stated a viable claim for a due process violation and for prospective injunctive relief, such a reading of the Circuit's order is too broad. The order only found that Plaintiff's complaint indicated that the alleged deprivation of her property "may have resulted from established state procedure or policy rather than random and unauthorized action." As a result, the Fifth Circuit found that Plaintiff's allegations may state a procedural due process claim and should not have been dismissed prior to service on Defendants pursuant to *Hudson v. Palmer*, 468 U.S. 517 (1984). This in no way indicates that the Fifth Circuit found or implied that Plaintiff had a *viable* claim for a due process violation and is wholly silent on Plaintiff's entitlement to prospective injunctive relief.

Therefore, Plaintiff's claims do not fall under the *Ex parte Young* exception because she failed to plead that that Defendants are *violating* her due process rights, instead pleading only that they had *violated* her rights at some point in the past. *See Reeves*, 954 F.3d at 738. However, as discussed below, even if Plaintiff were to seek to amend her complaint or if the Court assumes that there is a threat that Plaintiff will

11

continue to be denied some withdrawals from her account, she has failed to show that any such actions are constitutional violations. Thus, even assuming Plaintiff could allege a continuing violation, her claims fail in any event.

D. <u>Due Process and Inmate Trust Fund Accounts</u>

Plaintiff argues that the policies regarding review of withdrawal requests violate her right to due process. More specifically, she contends that her due process rights entitle her to an opportunity to be heard *prior* to the denial of a withdrawal request. Plaintiff also argues she is entitled to be provided reasons for any denial of a withdrawal request.

To prevail on a procedural due process claim, a plaintiff must show (1) that they suffered a deprivation of a constitutionally protected interest in "life, liberty, or property," and (2) that such deprivation occurred without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990) (citations omitted). "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law." Id.* (citation omitted); s*ee also Morris v. Livingston*, 739 F.3d 740, 749-50 (5th Cir. 2014) (citations omitted). A prisoner has a protected property interest in the funds in their prison account, *Eubanks v. McCotter*, 802 F.2d 790, 792-94 (5th Cir. 1986).

Courts review prison policies that impinge on fundamental constitutional rights under a deferential standard. *Baranowski v. Hart*¸486 F.3d 112, 120 (5th Cir. 2007). "[A] prison regulation that impinges on an inmate's constitutional rights is valid if it is

reasonably related to legitimate penological interests." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In making this determination, courts consider (1) whether there is a valid, rational connection between the regulation at issue and the legitimate, neutral governmental interest used to justify it; (2) whether the regulation entirely stifles the prisoner's constitutional right; (3) the impact of an accommodation on prison staff, inmates, and allocation of prison resources, including the "ripple effect" of striking it down; and (4) whether any alternative exists that would fully accommodate prisoners' rights at low costs to valid penological interests. *Turner*, 482 U.S. at 89–91; *Scott v. Miss. Dept. of Corr.*, 961 F.2d 77, 81 (5th Cir. 1992). The first factor "is the controlling question"; "the other factors merely help a court determine if the connection *is* logical." *Scott*, 961 F.2d at 81 (emphasis in original).

In the prison context, officials may impose reasonable restrictions on the type and amount of personal property that inmates possess. *Rochon v. La. State Penitentiary Inmate Acct.*, 880 F.2d 845, 846 (5th Cir. 1989); *McRae v. Hankins*, 720 F.2d 863, 869 (5th Cir. 1983), *abrogated on other grounds, Hudson v. Palmer*, 468 U.S. 517, 531-33 (1984); *see also Rosin v. Thaler*, 417 F. App'x 432, 434 (5th Cir. 2011) (recognizing property interest in inmate accounts). To the extent that Texas prisoners have a right to possess personal belongings, the deprivation of property implicates the Constitution only if such deprivation is accomplished without due process. *See Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

Due-process requirements for deprivations caused by state officials' authorized conduct are different from those caused by officials' unauthorized conduct. When a deprivation is authorized by an official policy, an inmate must be afforded some combination of notice prior to the deprivation and an opportunity to be heard. *See Zinermon v. Burch*, 494 U.S. 113, 127-28 (1990); *Stotter v. Univ. of Tex. San Antonio*, 508 F.3d 812, 821-22 (5th Cir. 2007). However, when officials engage in random and unauthorized conduct depriving an inmate of property, the deprivation is not foreseeable by the State and pre-deprivation process is impractical. For unauthorized deprivations, therefore, the State can satisfy due-process requirements by making available a meaningful post-deprivation tort remedy. *Zinermon*, 494 U.S. at 128-29; *see Parratt*, 451 U.S. at 541 (prison officials' negligent loss of an inmate's property was properly remedied by post-deprivation procedures); *Hudson*, 468 U.S. at 533 (state official's unauthorized and malicious destruction of the inmate's property was properly remedied by post-deprivation procedure).

Here, Plaintiff argues that the deprivation of her property rights, through the denial of her withdrawal requests, is a deprivation authorized by official policy. Plaintiff contends that due process requires that she have a meaningful right to be heard *prior* to the denial of her withdrawal requests and that she has the right to be informed of the reasons why the deprivation is about to occur.

Plaintiff admits that she was found guilty of trafficking and trading after a disciplinary proceeding. In that hearing it was determined that Plaintiff was using her inmate trust fund account to send money to outside persons who then deposited

money into trust fund accounts of other offenders. Following her disciplinary conviction, it was recommended that only payments made by Plaintiff to her attorney or verified court payments be permitted. Plaintiff contends, however, that she is nonetheless entitled to an opportunity to be heard each time she submits requests for withdrawals to any person or entity, but prior to the denial of the requests.

Defendants contend that Plaintiff's due process rights have been satisfied. Defendants assert that Plaintiff received notice when she was given a copy of the Offender Orientation Handbook which outlined the inmate trust account withdrawal process. Defendants argue that Plaintiff received an opportunity to be heard when she was subject to a prison disciplinary hearing, interviewed by the warden, filed grievances, and received replies to the grievances. Defendants contend that the regulations allowing for review and denial of withdrawals, while allowing for a post-deprivation opportunity to be heard through the grievance process, are sufficient to satisfy the requirements of due process in light of the legitimate penological interest of preventing extortion by and among inmates.

This case is similar to *Waddleton v. Collier*, No. 4:18-4015, 2022 U.S. Dist. LEXIS 14788 (S.D. Tex. Jan. 27, 2022). Waddleton had a high balance in his inmate trust fund account. He made a written request to withdraw $18,000 to be paid to a friend outside TDCJ. Waddleton also submitted multiple other requests for withdrawals for amounts from $495 to $18,000. Waddleton also alleged he was deprived of the use of his funds to hire an attorney for his probate case. Waddleton was granted permission for two withdrawals for $2,000, but the remainder of his requests were denied. Waddleton

claimed that the denials were unjustified and that the officials failed to provide an adequate explanation. In granting Defendants' motion to dismiss, the court found that Waddleton's due process rights had been satisfied. Specifically, the court explained that Waddleton had been able to file grievances and had received responses regarding the $18,000 withdrawal. In addition, Waddleton had received an interview with the warden regarding the denial. Although Waddleton did not prevail in the grievance process, the court found his grievance records demonstrate that officials provided him with notice and an opportunity to be heard.

The Court agrees with the reasoning of *Waddleton*. Further, Plaintiff in this case has been previously found to be in violation of prison rules regarding withdrawals made from her account. In addition, the Fifth Circuit has implied the sufficiency of the due process procedure for inmate trust fund withdrawals in *Morris v. Livingston.* There, the Fifth Circuit held that the prison system may take funds from an inmate's trust fund account for medical care and specifically rejected any due process challenges. 739 F.3d at 750–51. While the Court accepts Plaintiff's argument that she will continue to be denied hearings prior to the review of her withdrawal requests, there is no indication that the grievance process does not provide adequate due process protections for any future withdrawal denials, even if Plaintiff is unsuccessful in the grievance process. *See Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005) (inmate does not have protected interest in having grievances resolved to his satisfaction); *Evans v. Baker*, 442 F. App'x 108, 110 (5th Cir. 2011) (inmate "received the due process protections required when he received notice of the basis for the confiscation of the subject

property and a fair opportunity to rebut the allegations concerning his ownership of the property at the [disciplinary] hearing and in his grievances"); *Allen v. Thomas*, No. H-02-3132, 2005 U.S. Dist. LEXIS 49422, 2005 WL 2076033, at *9 (S.D. Tex. Aug. 26, 2005) (despite "the lack of a formal hearing," inmate "was afforded ample notice and sufficient opportunity to object to the confiscation of his property" because he "complained informally to [an official] in person and formally by pursuing the two-step prison grievance process"); Tex. Gov't Code 501.008(a) (grievance system provides "exclusive administrative remedy" for an inmate's claim against prison officials that arises during incarceration).

Because any due process requirements that apply to the denied withdrawals were satisfied, Plaintiff's claims will be dismissed, even assuming Plaintiff properly pleaded or could properly plead an ongoing violation. In light of the legitimate penological interests of the policy to prevent inmate extortion, the timing and parameters of the notice and opportunity to be heard regarding withdrawal requests from Plaintiff's inmate trust fund account are sufficient.

E.     Violation of TDCJ Policy

To the extent Plaintiff complains Defendants failed to follow TDCJ policies with regard to making decisions on whether an inmate's withdrawal request should be granted, she fails to state a constitutional violation. The mere allegation that prison policies were not followed does not state a claim. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (per curiam).

CONCLUSION

It is therefore **ORDERED** that Defendants Bryan Collier, Jennifer Cozby, and Karen Stroleny's Motion for Summary Judgment (#47) is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims against all Defendants are **DISMISSED WITH PREJUDICE**.

It is finally **ORDERED** that all other pending motions are **DISMISSED**.

**SIGNED** on May 26, 2022

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE